UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ALIYAH R. H.,

                                    Plaintiff,

                                                                **OPINION & ORDER**

        - against -

                                                                No. 24-CV-9924 (CS) (GRJ)

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                                    Defendant.
-------------------------------------------------------------x

Appearances:

Daniel Berger
Bronx, New York
*Counsel for Plaintiff*

Fergus Kaiser
Special Assistant United States Attorney
Baltimore, Maryland
*Counsel for Defendant*

Seibel, J.

        Before the Court are the objections of Plaintiff Aliyah R. H., (ECF No. 21 ("Obj.")), to

the Report and Recommendation of United States Magistrate Judge Gary R. Jones, (ECF No. 18

(the "R&R")), recommending that this Court deny Plaintiff's motion for judgment on the

pleadings pursuant to Federal Rule of Civil Procedure 12(c), (ECF No. 13), and dismiss the case.

For the reasons discussed below, the Court adopts the R&R and dismisses Plaintiff's complaint.

## I.    **BACKGROUND**

        The Court adopts the recitation of facts and procedural history set forth by Judge Jones in

the R&R, (*see* R&R at 1-6), and assumes the parties' familiarity with it.  The Court will refer to

the facts relevant to Plaintiff's objections as it discusses them.  The Administrative Record

("A.R.") was supplied to the Court under seal and is found at ECF No. 12.  The decision of the

Administrative Law Judge ("ALJ") from which Plaintiff appeals is found at A.R. 1325-41.

Citations to "ALJD" are to the ALJ's decision and use the internal pagination of that decision.

II.     **STANDARD OF REVIEW**

      A.     **Review of a Report and Recommendation**

A district court reviewing a report and recommendation "may accept, reject, or modify, in

whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C.

§ 636(b)(1)(C).  The district court "may adopt those portions of the report to which no 'specific,

written objection' is made, as long as the factual and legal bases supporting the findings and

conclusions set forth in those sections are not clearly erroneous or contrary to law."  *Adams v.

N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P.

72(b)) (citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985)), *aff'd sub. nom. Hochstadt v. N.Y. State

Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013) (summary order).[1]  "A party that objects to a report

and recommendation must point out the specific portions of the report and recommendation to

which they object."  *J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 659 F. Supp. 2d 350,

352 (E.D.N.Y. 2009).  If a party fails to object to a particular portion of a report and

recommendation, further review thereof is generally precluded.  *See Mario v. P & C Food Mkts.,

Inc.*, 313 F.3d 758, 766 (2d Cir. 2002).  The court must review *de novo* any portion of the report

to which a specific objection is made.  *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Male Juv.*,

121 F.3d 34, 38 (2d Cir. 1997).  When a party makes only conclusory or general objections, or

simply reiterates the original arguments made below, a court will review the report only for clear

---

[1] Unless otherwise indicated, all case quotations omit internal citations, quotation marks, alterations and footnotes.

error.  *See Alaimo v. Bd. of Educ.*, 650 F. Supp. 2d 289, 291 (S.D.N.Y. 2009).  "Furthermore, [even] on *de novo* review, the Court generally does not consider arguments or evidence which could have been, but were not, presented to the Magistrate Judge."  *United States v. Vega*, 386 F. Supp. 2d 161, 163 (W.D.N.Y. 2005).

### B.    <u>Review of a Social Security Claim</u>

In reviewing a Social Security claim, the reviewing court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied."  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  A reviewing court does not determine *de novo* whether a claimant is disabled; instead, a court may overturn the determination of an ALJ only if it is "based upon legal error" or "not supported by substantial evidence."  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations."  *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019).  "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (*per curiam*) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Under this "very deferential standard of review," the ALJ's "determination must be upheld if it is rational and supported by the record, even if the evidence is susceptible to more than one rational interpretation."  *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 70 (2d Cir. 2025).  Still, the ALJ must "set forth the crucial factors underlying their factual findings and determinations with sufficient specificity so that the reviewing court can decide whether the determination is supported by substantial evidence."  *Id.*

In considering whether substantial evidence supports the ALJ's decision, the reviewing court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012).

### III.    ANALYSIS

Plaintiff objects to Judge Jones's recommendation that this Court conclude that the ALJ's analysis concerning Plaintiff's residual functional capacity ("RFC") to perform sedentary work contained no procedural or substantive error and was supported by substantial evidence. (*See* R&R at 9, 15, 20; ALJD at 7-15.)  Specifically, Plaintiff objects to Judge Jones's recommendations concerning the ALJ's evaluation of medical opinion evidence and Plaintiff's subjective statements in determining Plaintiff's RFC. (Obj. at 1, 8.)

### A.    Medical Opinion Evidence

Plaintiff objects to Judge Jones's recommendation that the Court rule that the ALJ did not err when he found opinions from Michele Tyler, F.N.P., and Sana Bloch, M.D., unpersuasive. (Obj. at 1-8.)  Tyler opined that Plaintiff "would be unable to work a full range of sedentary work duty," (ALJD at 12), and found severe limitations in Plaintiff's ability to walk, stand, balance, and sit, (*see* A.R. at 1270-72).  Similarly, Bloch issued a "physician's order for personal care and assistance services . . . [that] precludes all lifting, bending, and climbing." (ALJD at 14; *see* A.R. at 3302-03.)  Plaintiff makes several specific arguments regarding the alleged errors of the ALJ and Judge Jones in evaluating these opinions, which the Court will address *de novo* in turn.

The U.S. Social Security Administration's ("SSA") regulations guide an ALJ's decision in determining whether a claimant is eligible for disability benefits and provide certain procedural requirements for evaluating evidence.  *See White v. Comm'r of Soc. Sec.*, No. 20-CV-

6222, 2022 WL 951049, at *4-6 (S.D.N.Y. Mar. 30, 2022).  "For benefits applications filed before March 27, 2017, the SSA's regulations required an ALJ to give more weight to [the opinions of] those physicians with the most significant relationship with the claimant."  *Id.* at *5. Under the so-called "treating physician rule," if the ALJ "decline[d] to afford controlling weight to a treating physician's medical opinion," the ALJ had to "consider various factors to determine how much weight to give to the opinion."  *Kevin E. v. Comm'r of Soc. Sec.*, 528 F. Supp. 3d 104, 108-09 (W.D.N.Y. 2021).  Under the new regulations, however, "the Commissioner no longer needs to assign particular evidentiary weight to the various treating sources in a medical record and their opinions."  *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).  The Commissioner considers the following five factors when considering medical opinions:  (1) supportability, (2) consistency, (3) relationship with the claimant (which requires consideration of five sub-factors), (4) specialization, and (5) other factors "that tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  "[S]upportability and consistency are the most important" factors that an ALJ considers when evaluating medical opinions.  *Rubin v. O'Malley*, 116 F.4th 145, 148 (2d Cir. 2024).  An ALJ is "required to explain her approach to [those] factors when considering a medical opinion, but need not expound on the consideration given to the rest of the factors."  *Acosta Cuevas*, 2021 WL 363682, at *9.

Supportability refers to "how well the objective medical evidence and explanations given support the medical source's conclusions."  *Nunez*, 164 F.4th at 73 (citing 20 C.F.R. § 404.1520c); *see Woods v. Comm'r of Soc. Sec.*, No. 24-945, 2025 WL 938639, at *2 (2d Cir. Mar. 26, 2025) (summary order) (to the same effect).  "Consistency refers to how similar 'a

5

medical opinion(s) or prior administrative medical finding(s) is with the evidence' in the record." *Woods*, 2025 WL 938639, at *2 (quoting 20 C.F.R. § 404.1520c(c)(2)); *see Nunez*, 164 F.4th at 73 (citing 20 C.F.R. § 404.1520c). "The ALJ must explain how she 'considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [her] determination or decision.'" *Woods*, 2025 WL 938639, at *2 (quoting 20 C.F.R. § 404.1520c(b)(2)). The ALJ "is not required to use magic words but rather 'explain how he considered the supportability and consistency factors' in evaluating the persuasiveness of the medical opinion." *Simpson v. Comm'r of Soc. Sec.*, No. 22-CV-10606, 2024 WL 1300443, at *10 (S.D.N.Y. Mar. 26, 2024) (quoting *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) (summary order)), *aff'd*, No. 24-1104, 2025 WL 1156973 (2d Cir. Apr. 21, 2025) (summary order)). A reviewing court must be able to "fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (*per curiam*).

### 1.    Tyler's Treatment Gap

First, Plaintiff takes issue with Judge Jones's recommendation that the Court find that the ALJ did not err in finding that Tyler's opinion was unpersuasive, in part because Tyler had not treated Plaintiff in roughly sixteen months before providing her medical source statement. (Obj. at 1-2.) Plaintiff states that the ALJ "mischaracterized" the evidence by concluding that Tyler's report from February 12, 2020, followed a sixteen-month gap in treatment even though Tyler had actually seen Plaintiff two days earlier on February 10. (*Id.*) Plaintiff, however, mischaracterizes the ALJ's decision. The ALJ does not suggest that Tyler issued her opinion without having seen Plaintiff in approximately sixteen months, but rather that, before Plaintiff

6

"went to [Tyler] to get this medical opinion," there had been a sixteen-month gap in treatment. (ALJD at 14.)  It is obvious from the record that Tyler examined Plaintiff before issuing her medical source opinion, (*see* A.R. at 1269-74),[2] and the ALJ's opinion simply observed that there had been a sixteen-month gap between the two medical exams, not between the medical exam and the issuing of an opinion based on that exam, (*see* ALJD at 14).

### 2.    Inconsistencies in the Medical Treatment Record with Tyler's and Bloch's Opinions

Second, Plaintiff objects to Judge Jones's recommendation that the Court find that the ALJ did not err in finding Tyler's and Bloch's opinions unpersuasive because of inconsistencies with the medical treatment record.  (Obj. at 2-7.)  Plaintiff argues that the two opinions were well supported in the treatment record and suggests that the ALJ pointed to only one internal inconsistency in Tyler's opinion, ignored Tyler's and Bloch's many other opinions, and provided a rationale for his decision different from the one that Judge Jones ultimately credited in his R&R.  (*Id.*)[3]

As to Bloch, Plaintiff argues the ALJ "identified no specific evidence contradicting" Bloch's opinion that Plaintiff "cannot bend and cannot lift on a sustained basis in a work environment."  (*Id.* at 3.)  When discussing Bloch's opinion, however, the ALJ stated that "[t]he treatment records do not support an inability to lift any weight, nor do they support an inability to bend," with accompanying citations to the treatment record.  (ALJD at 14.)  The ALJ then went

---

[2] Tyler's report is dated February 12, 2020; states that the visit occurred on February 10, 2020; and lists October 29, 2018 as the date of Plaintiff's "last visit."  (A.R. at 1269, 1274.)

[3] Plaintiff also argues in this portion of her objections that the ALJ erred in failing to consider the consistency of Tyler's and Bloch's opinions with each other when finding them unpersuasive.  (Obj. at 4-5.)  The court will address this argument in Part III.A.3 of this Opinion & Order, which addresses Plaintiff's objection to the ALJ and Judge Jones rejecting Tyler's and Bloch's opinions as inconsistent with other medical opinions in the record.  (*See* Obj. at 7.)

on to describe how Bloch's opinion concerning Plaintiff's climbing ability was unsupported and contradicted by evidence in the record as to Plaintiff's ability to climb stairs and ramps. (*Id.*) The ALJ thus satisfied the requirement to consider the "supportability" of Bloch's opinions when he found them unpersuasive, as required by the SSA regulations.

As to Tyler, Plaintiff acknowledges that the ALJ pointed out that Tyler's opinion contained an internal contradiction when she stated that Plaintiff could not handle with either hand but relied on a cane to walk. (Obj. at 2; ALJD at 14.) Plaintiff argues that the ALJ nevertheless ignored the rest of Tyler's opinions finding severe limitations. (Obj. at 2-3.) When assessing medical source opinions, the ALJ cannot "cherry pick" the conclusions with which he or she agrees and ignore those that are contrary to his or her conclusions, *Patrick John B. v. Comm'r of Soc. Sec.*, No. 19-CV-1209, 2020 WL 7767643, at *4 (W.D.N.Y. Dec. 30, 2020), but "[c]urrent regulations do not require the ALJ to articulate an explanation for how persuasive he or she finds every individual opinion of a medical source," *Taylor v. Comm'r of Soc. Sec.*, 711 F. Supp. 3d 148, 159 (E.D.N.Y. 2024) (collecting cases). "The relevant inquiry is whether a reviewing court can fathom the ALJ's reasoning in relation to the record evidence as a whole." *Dustin P. v. Comm'r of Soc. Sec.*, No. 23-CV-455, 2023 WL 8189976, at *5 (W.D.N.Y. Nov. 27, 2023) (citing *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014)). Here, reading the ALJ's decision as a whole, it is clear how the ALJ assessed Tyler's opinions in relation to the medical record evidence. Although he did not mention them in the section of his opinion where he explicitly stated that he found Tyler's opinions unpersuasive, the ALJ recounted earlier in his opinion the many severe limitations that Tyler found Plaintiff to have and that Plaintiff says the ALJ ignored. (*See* ALJD at 12, 14; Obj. at 2-3.) The ALJ also went through a detailed analysis of Plaintiff's medical treatment record, finding severe impairments, though not as severe as Tyler

8

opined.  (ALJD at 8-11.)  After reading the ALJ's opinion in whole, "the Court can glean" how the ALJ evaluated the supportability of Tyler's opinion, and thus "the substance of [the SSA regulations] was not traversed."  *Simpson*, 2024 WL 1300443, at *10.

Plaintiff further objects that the R&R cites, as a reason to support the ALJ's finding of inconsistencies between the treatment record and Tyler's and Bloch's opinions, that "a reasonable reading of the record . . . generally shows full muscle strength, normal muscle tone, normal weight, full range of motion, and unimpaired weight bearing," (R&R at 13), when the ALJ did not provide this rationale, (Obj. at 6-7).  I disagree.  Although the ALJ does not use those exact words in finding Tyler's and Bloch's opinions unpersuasive due to a lack of supportability, it is clear from the ALJ's decision that the ALJ reached that conclusion after a substantial review of the medical records, which contained findings, as Judge Jones summarized in the R&R, that do not support Tyler's and Bloch's opinions.  (*See* ALJD at 11-12, 14-15.)  As Judge Jones notes, the ALJ thus conducted "a reasonable reading of the record" to conclude that the most extreme limitations in Tyler's and Bloch's opinion were unsupported.  (*See* R&R at 13.) Although he may not have used "magic words," the ALJ's discussion makes clear how he considered the supportability factor.  *See Nieves v. Comm'r of Soc. Sec.*, No. 23-CV-5, 2024 WL 992197, at *17 (S.D.N.Y. Feb. 20, 2024), *report and recommendation adopted*, 2024 WL 990125 (S.D.N.Y. Mar. 7, 2024).

Plaintiff also contests that the ALJ erred because both Tyler's and Bloch's opinions find support in the "clinical and objective evidence" in the treatment record.  (Obj. at 5.)  The portions of the treatment record that Plaintiff cites as being consistent with Tyler's and Bloch's opinions – and thus purportedly showing severe limitations that preclude Plaintiff's ability to work – however, are many of the same exhibits that the ALJ cited when finding Plaintiff's

9

impairments do not limit her ability to perform some sedentary work.  (*See* Obj. at 5; ALJD at 8-9.)  The ALJ's discussion does not demonstrate that his decision was procedurally deficient, but instead, and at best for Plaintiff, suggests that "the evidence is susceptible of more than one interpretation."  *See DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422, 2022 WL 845751, at *4 (S.D.N.Y. Mar. 21, 2022).  Where an ALJ's decision relies on reliable evidence that "a reasonable mind might accept as adequate to support a conclusion," the Court will defer to that finding under the substantial evidence standard.  *See Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447-48 (2d Cir. 2012).  The ALJ thus satisfied the procedural requirements of the SSA regulations and cites substantial evidence in support of his findings that Tyler's and Bloch's opinions were not supported by the medical treatment record.

### 3. Consistency of Tyler's and Bloch's Opinions with Other Medical Source Opinions

Third, Plaintiff objects to Judge Jones's finding that the ALJ properly rejected Tyler's and Bloch's opinions as inconsistent with other medical source opinions, arguing that the ALJ did not consider the consistency of Tyler's and Bloch's opinions with each other, (Obj. at 4-5), and that when assessing their opinions' consistency with other opinions in the record, Judge Jones provided a rationale "not provided by the ALJ" and "in direct contradiction of findings made by the ALJ," (*id.* at 7).  The Court disagrees.

"An ALJ's failure to consider the consistency of the physicians' opinions with each other constitutes legal error."  *Smith v. O'Malley*, No. 23-CV-2339, 2024 WL 1983881, at *12 (S.D.N.Y. May 6, 2024).  An ALJ needs to account for "the consistency (or lack thereof) across all physicians, as it is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports her determination, without affording consideration to evidence supporting the plaintiff's claims."  *Id.*  An ALJ's consideration of each medical opinion in

10

isolation is also an error requiring remand.  *See Belinda P. v. Comm'r of Soc. Sec.*, No. 24-CV-3174, 2025 WL 993311, at \*5 (S.D.N.Y. Apr. 1, 2025); *Simpson*, 2024 WL 1300443, at \*10. Substantial evidence does not support a finding that medical opinions are unpersuasive for lack of consistency where an ALJ rejects all medical opinions as lacking consistency with the totality of the medical record, but all the rejected medical opinions were consistent with each other.  *See Nunez*, 164 F.4th at 74.

The ALJ did not fail to account for the consistency of Bloch's and Tyler's opinions with each other.  Rather, it is clear from a reading of the ALJ's discussion of the medical sources' opinions and the ALJ's evaluation of their persuasiveness that Tyler and Bloch were consistent in finding Plaintiff to have severe limitations, yet the ALJ found that the weight of the rest of the medical and nonmedical evidence, including other medical source opinions, supported different conclusions.  (*See* ALJD at 11-12, 14-15.)  Again, the ALJ need not use "magic words," (*i.e.*, stating verbatim that Tyler's and Bloch's opinions had consistencies but were inconsistent with other evidence and medical opinions), and these conclusions are obvious from a fair reading of the ALJ's discussion.  For example, the ALJ states that "Tyler opined that [Plaintiff] would be unable to work a full range of sedentary work duty. . . .  She could only occasionally balance . . . .  She would need a cane for prolonged walking."  (*Id.* at 12.)  In the next paragraph, the ALJ states that Bloch opined that "[t]he claimant could not lift, bend, or climb.  She needed a walker or a cane for ambulation."  (*Id.*)  Requiring the ALJ to then state that these opinions, discussed in his opinion in connection with each other, are consistent would be a requirement to use "magic words."  The Court declines to find any error in the ALJ's failure to do so.

Nor did the ALJ, as Plaintiff contends, fail to account for the consistency (or lack thereof) of Tyler's and Bloch's opinions with the other medical opinions in the record.  In addition to

Tyler and Bloch, the ALJ also considered the opinion of Ann Marie Finegan, M.D., and prior administrative findings from state medical doctor J. Poss, M.D.  (*Id.* at 11, 14.)  Finegan opined that Plaintiff was not rendered unable to work and found her to be "mildly limited" in her ability to perform certain activities.  (*Id.* at 11.)  Finegan also found Plaintiff to have full range of motion in her spine and lower extremity joints, and noted that Plaintiff was not in "acute distress," had "a normal gait" and could walk, squat, get on and off an exam table, and rise from a chair without difficulty, among other findings less severe than those of Tyler and Bloch.  (*See id.* at 11-12.)  The ALJ stated that he found unpersuasive Finegan's opinion because her assessment did not define the term "mild" and was inconsistent with the totality of the treating record.  (*Id.* at 14.)  After stating that he found Tyler's, Bloch's, and Finegan's opinions unpersuasive, the ALJ stated that he reached this conclusion after "consider[ing] the prior administrative findings in this case[,]" including Poss's opinion that Plaintiff "retained the capacity to perform light exertional activity with occasional postural activity."  (*Id.*)  The ALJ in the next sentence found Poss's opinion to understate Plaintiff's limitations, and instead said, based on the entire record, Plaintiff has "greater limitations in standing and walking, lifting and carrying, and greater manipulative restrictions."  (*Id.*)  This discussion clearly demonstrates the ALJ's grappling with the consistency of each of these medical opinions and reaching a conclusion that found Plaintiff to be more limited than some of the medical providers believed her to be but less limited than others thought.

Nor, as Plaintiff contends, does Judge Jones's synthesis of the ALJ's decision rest on a rationale absent from or contradictory to the ALJ's decision.  (Obj. at 7.)  Judge Jones correctly noted that the ALJ had rejected the Tyler/Bloch opinions as overstating the severity of Plaintiff's

12

condition and the Finegan/Poss opinions as understating it;[4] correctly observed that the latter set

of opinions nevertheless undermined the former's conclusion of extreme limitations; and

correctly concluded that under the applicable deferential standard of review, the ALJ's decision

did not rest on insubstantial evidence.  (R&R at 14-16.)

Accordingly, I agree that the ALJ properly considered the consistency of the medical

source opinions as required by the SSA regulations, and his conclusions were supported by

substantial evidence.

### 4.      Judge Jones's "Fail[ure]" to Address How the ALJ Determined Plaintiff's RFC After Discounting the Medical Opinions

Fourth, Plaintiff objects that Judge Jones did not address Plaintiff's argument that the

ALJ failed to properly determine Plaintiff's physical RFC "after discounting every single

medical opinion in the record."  (Obj. at 8.)  Plaintiff recites the ALJ's findings as to her RFC to

perform sedentary work,[5] and then states that the ALJ "in violation of longstanding legal

---

[4] This is thus not a situation like *Nunez*, where the rejected decisions were largely consistent.  *See Nunez*, 164 F.4th at 74.

[5] Specifically, the ALJ concluded that:

> After careful consideration of the entire record, the undersigned finds that since June 10, 2017, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except the claimant requires the use of a one-handed cane to stand and ambulate.  The claimant cannot climb ladders, ropes, or scaffolds or work on slippery or uneven surfaces.  She can occasionally climb ramps and stairs and occasionally balance, stoop, crouch, crawl, and kneel.  The claimant can frequently reach in front or laterally, finger, and feel, bilaterally.  She cannot reach overhead bilaterally.  She cannot operate bilateral foot controls.  The claimant cannot work at unprotected heights or around dangerous machinery.  The claimant is further limited to simple, routine work not performed at a production-rate pace.

(ALJD at 7.)  This conclusion is provided at the start of the seven-and-a half-page, single-spaced portion of the ALJ's decision addressing Plaintiff's RFC, in which the medical opinions and records are discussed in detail.

principles failed to explain what evidence supported this determination." (*Id.*)  An ALJ's RFC conclusion does not need to "perfectly correspond with any of the opinions of medical sources." *Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (summary order).  "It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion."  *Breinin v. Colvin*, No. 14-CV-1166, 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015).  The ALJ's ultimate determination of Plaintiff's RFC may not match any one of the medical source opinions in the record, but that is not grounds for remand if an ALJ determines a claimant's RFC after weighing all evidence available and makes a determination supported by substantial evidence that is more restrictive than some opinions but less restrictive than others.  *See Baker*, 2018 WL 1173782, at *2.  That is exactly what happened here.  Judge Jones adequately addressed these arguments and reached the proper conclusion that the ALJ's conclusions were supported by substantial evidence and free of legal error.  (*See* R&R at 15-16.)

### 5.    Conclusion

The Court's *de novo* review of the ALJ's decision regarding the medical source opinions is consistent with Judge Jones's R&R, and the Court therefore adopts it.  The ALJ's decision to discount certain medical source opinions as unpersuasive was supported by substantial evidence after discussing the opinions' supportability and consistency, as required by the SSA regulations.  The ALJ's ultimate conclusions concerning Plaintiff's RFC were also supported by substantial evidence.

### B.    Plaintiff's Subjective Statements

Plaintiff also objects to Judge Jones's recommendation that the Court find that the ALJ's evaluation of Plaintiff's subjective statements was proper.  (Obj. at 8.)  Judge Jones concluded

that the ALJ properly discounted Plaintiff's statements based on "a reasonable reading of the treatment notes and clinical assessments, an appropriate reconciliation of the medical opinion evidence, and proper consideration of Plaintiff's activities of daily living."  (R&R at 20-21.) Plaintiff calls this a "vague conclusion" that "is difficult to follow."  (Obj. at 8.)  The Court disagrees.

"A claimant's subjective complaints are an important element in the adjudication of Social Security claims, and must be thoroughly considered in calculating the RFC of a claimant." *Castillo v. O'Malley*, No. 24-41, 2024 WL 4707253, at *3 (2d Cir. Nov. 7, 2024) (summary order).  An ALJ, however, need not "accept the claimant's subjective complaints without question" and has discretion to weigh the credibility of the claimant's statements against the rest of the record.  *Id.*  A two-step process guides an ALJ's evaluation of a claimant's statements:

> First, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged.  Second, if the claimant does suffer from such an impairment[,] the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record.

*Id.*; *see, e.g.*, *Erica N. v. Comm'r of Soc. Sec. Admin.*, No. 24-CV-8700, 2025 WL 3765681, *18-19 (S.D.N.Y. Dec. 12, 2025) (evaluating an ALJ's application of the two-step process), *report and recommendation adopted sub nom. Napolitano v. Comm'r of Soc. Sec. Admin.*, 2025 WL 3765422 (S.D.N.Y. Dec. 30, 2025); *Savanna Rose C. v. Comm'r of Soc. Sec.*, No. 25-CV-1415, 2025 WL 3720854, at *6-8 (S.D.N.Y. Dec. 5, 2025) (same), *report and recommendation adopted*, 2025 WL 3720792 (S.D.N.Y. Dec. 23, 2025); *John M. v. Bisignano*, No. 24-CV-6907, 2025 WL 3162087, at *11-12 (S.D.N.Y. Sept. 17, 2025) (same), *report and recommendation adopted*, 2025 WL 2992282 (S.D.N.Y. Oct. 24, 2025).

15

If the objective medical evidence does not substantiate the claimant's claims, then the ALJ must engage in a credibility inquiry in which the ALJ considers the following factors as laid out in the relevant SSA regulation:

(1) the claimant's daily activities;
(2) the location, duration, frequency, and intensity of the pain;
(3) precipitating and aggravating factors;
(4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
(5) any treatment, other than medication, that the claimant has received;
(6) any other measures that the claimant employs to relieve the pain; and
(7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

*Meadors v. Astrue*, 370 F. App'x 179, 183-84 & n.1 (2d Cir. 2010) (summary order) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

The ALJ performed this analysis properly, and his conclusions are supported by substantial evidence. The ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but found that her statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (ALJD at 8.) He stated that the record did not support finding that Plaintiff's impairments "render her unable to perform the demands of a wide range of exertionally sedentary work," as Plaintiff had claimed, (*id.*), and went on to discuss in detail, and with voluminous citations to the record, impairments to Plaintiff's back, knees, and feet, such as spinal stenosis ranging from mild to severe at various discs, spinal cord compressions, a meniscus tear in her left knee, and bone spurs in both feet, (*id.* at 8-9). Because of these conditions, the ALJ found that Plaintiff is "necessarily restricted from climbing ladders, ropes, and scaffolds and working on slippery or uneven surfaces," though she can "occasionally climb ramps and stairs and occasionally balance, stoop, crouch, crawl, and

16

kneel." (*Id.* at 9.)  The ALJ further discussed neurological and mental health symptoms that Plaintiff experienced, such as vertigo, anxiety attacks, and trouble concentrating or with memory. (*Id.* at 10.)  Instead of balance therapy, Plaintiff began physical therapy for her pain, which she reported as helping as well as alleviating her fibromyalgia symptoms.  (*Id.*)  Plaintiff also reported new medications as helping treat her fibromyalgia.  (*Id.*)  The ALJ also noted that Plaintiff has carpal tunnel syndrome in both hands that is mild to moderate and that, in addition to her back conditions, limits her ability to reach overhead, frequently reach in front and laterally, and use her hands for fingering and feeling.  (*Id.* at 10-11.)  Plaintiff is also obese, the ALJ stated, although that has not caused "significantly limiting symptoms or end organ manifestations."  (*Id.* at 11.)

The ALJ took note of all these conditions, but explained that the treatment notes show that throughout the physical examinations, "treatment providers have observed the claimant consistently in no acute distress, neurologically grossly intact, [with] full strength in the lower extremities, and independent mobility with the use of an assistive device."  (*Id.*)  The ALJ also noted how Plaintiff reported doing a host of daily activities, such as doing her own cooking, cleaning, and grocery shopping (which involved walking four blocks each way).  (*Id.*; *see id*. at 14.)  Plaintiff also cares for her dog with twice-daily walks (which requires going up and down a flight of stairs) and feeding.  (*Id.* at 11, 14.)  As a result, the ALJ concluded that "[t]here is . . . a general pattern of subjective report of physical symptoms as more severe than objective testing revealed," and Plaintiff at times described her treatment in ways that directly contradicted her providers' treatment notes.  (*Id.* at 11.)

The ALJ's discussion satisfies the requirements of the two-step inquiry that he was to conduct when evaluating Plaintiff's statements.  He cited the proper standard, (*id.* at 8), and

included a thorough consideration of Plaintiff's daily activities, pain, medications and treatments, as required by the applicable regulation, (*id.* at 8-11).  "[A]lthough an ALJ is required to consider all of the required credibility factors, he is not required to explicitly discuss each one." *Pratts v. Colvin*, No. 14-CV-6176, 2015 WL 4276331, at *11 (W.D.N.Y. July 14, 2015).  "While the ALJ did not discuss all seven factors listed in 20 C.F.R. § 416.929(c)(3), he provided specific reasons for his credibility determination," *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (summary order), with "sufficient specificity to permit intelligible plenary review of the record," *Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 260-61 (2d Cir.1988); *see Cichocki*, 534 F. App'x at 76 (remand not required where "the evidence of record permits us to glean the rationale of an ALJ's decision").

As Judge Jones's R&R noted, the ALJ's conclusion that Plaintiff could still perform sedentary work despite her statements to the contrary had specific support in the record from Plaintiff's treatment notes and clinical assessments, the ALJ's "reconciliation of the medical opinion evidence,"[6] and Plaintiff's own account of her daily activities.  (R&R at 20-21.) The Court's *de novo* review of the ALJ's decision regarding Plaintiff's subjective statements is consistent with Judge Jones's R&R, and the Court therefore adopts it.

---

[6] Plaintiff suggests that the ALJ conducted an improper analysis of the medical opinions "vis a vis the consideration of statements by a lay witness, such as Plaintiff" because the "regulatory scheme requires the analysis [of the two] to be distinct."  (Obj. at 8.)  Although the Court agrees that the regulatory scheme has different requirements for an analysis of medical opinions and subjective statements about pain, the ALJ here followed the required procedures for both, as discussed at length in this opinion.  Moreover, Plaintiff's citation to a case relying on the outdated version of the regulations that required ALJs to give controlling weight to the claimant's treating physician's opinion is inapposite.  (*See* Obj. at 8-9 (citing *Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015).)

IV.    **CONCLUSION**

For the reasons set forth above, Plaintiff's objections are overruled.  The Court has reviewed for clear error the portions of the R&R as to which no objection was raised, and finds none.  Accordingly, the Court adopts Magistrate Judge Jones's R&R as the decision of the Court. Plaintiff's motion for judgment on the pleadings is denied.  The case is dismissed.[7]  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 13), and close the case.

**SO ORDERED.**

Dated:  March 2, 2026
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[7] Although Defendant did not formally submit a cross-motion for judgment on the pleadings, the Court may construe its opposition to Plaintiff's motion before Judge Jones, in which Defendant asked for dismissal of Plaintiff's complaint, (ECF No. 16 at 18), as a cross-motion for judgment on the pleadings. *See Primiani v. Astrue*, No. 09-CV-2405, 2010 WL 474642, at *1 n.1 (E.D.N.Y. Feb. 5, 2010); *Roeda S. v. Comm'r of Soc. Sec.*, No. 20-CV-906, 2022 WL 229086, at *17 n.32 (N.D.N.Y. Jan. 5, 2022), *report and recommendation adopted sub nom. Roeda S. v. Kijakazi*, No. 20-CV-906, 2022 WL 226766 (N.D.N.Y. Jan. 26, 2022).